FILED
2022 Aug-04  AM 09:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LINDSAY WILHELM HOWARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **v.** | ) | |
| | ) | _____ |
| **THERANEST, LLC,** | ) | |
| | ) | **PLAINTIFF DEMANDS** |
| **Defendant.** | ) | **TRIAL BY STRUCK JURY** |

---

## COMPLAINT

---

### JURISDICTION AND VENUE

1.      This is a complaint for legal and equitable relief to redress violations by the Defendant of the Plaintiff's rights secured by:

   a.      Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII");

   b.      Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k).

2.      Federal subject matter jurisdiction exists pursuant to:

   a.      28 U.S.C. §§ 1331, 1343, and 1367;

   b.      Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, <u>et seq.</u>

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).


## PARTIES

4.      Plaintiff Lindsay Howard (hereinafter "Plaintiff" or "Howard") is a resident of Jefferson County, Alabama, and is over the age of nineteen (19) years. Plaintiff was employed at TheraNest, LLC, as a marketing content strategist.

5.      Defendant TheraNest LLC (hereinafter "Defendant" or "TheraNest) is a corporation doing business in Jefferson County, Alabama, is an employer under Title VII, and has more than fifteen (15) employees.


## NATURE OF ACTION

6.      Plaintiff brings this action against Defendant for acts of intentional sex discrimination that occurred during her employment with Defendant.

7.      Plaintiff seeks back pay and all compensatory and punitive damages to which she is entitled. Plaintiff also seeks attorneys' fees and costs.


## ADMINISTRATIVE PROCEDURES

8.      On March 5, 2021, within 180 days of the acts of discrimination of which she complains, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC").  **(See Exhibit A.)**

9.      On May 5, 2022, the EEOC issued a Notice of Right to Sue **(See Exhibit B.)** that was received by the Plaintiff on May 8, 2022.

10.     All prerequisites for bringing this action have been met.

## STATEMENT OF FACTS

11.     Howard is female and was pregnant at all times relevant to her claims.

12.     In October 2019, Howard was connected with TheraNest via a recruiter named Tyler Bruce (hereinafter "Bruce"). Howard informed Bruce that she was pregnant.

13.     Bruce proceeded to set up interviews with Howard for TheraNest in November and December 2019. The interviews took place via telephone and Zoom, respectively.

14.     Howard interviewed with her potential team members: Shannon Vann, Alex Shockley, Charlie Ray, Emily Claypool, and Nichelle Cantrell.

15.     On January 9, 2020, Howard had an in-person interview with Strategic Marketing Supervisor Kate Balch (hereinafter "Balch") and Balch's superior, Vice President of Marketing Shannon Vann (hereinafter "Vann"). Balch and Vann hired Howard at the conclusion of the interview.

16.     On January 22, 2020, Howard began her employment with TheraNest.

17.    On January 22, 2020, Howard approached Balch to discuss TheraNest's maternity leave policy and to schedule her maternity leave.

18.    Balch reacted with shock and surprise when Howard asked her about maternity leave.

19.    Howard learned then that TheraNest did not have a set maternity leave policy in place and it took weeks for TheraNest to give Howard any answers regarding her maternity leave.

20.    Howard coordinated her maternity leave with Anissa Holmes (hereinafter "Holmes") in Human Resources and took twelve (12) weeks of maternity leave, returning to work on June 22, 2020.

21.    Prior to her maternity leave, Howard worked on a team with Emily Claypool (hereinafter "Claypool").  Howard and Claypool shared responsibility for completing projects and assignments.

22.    When Howard returned from maternity leave, Balch told her that Claypool was being transferred to another role and that no one was replacing her. Howard would be performing the work of two people.

23.    From June 22, 2020, until July 6, 2020, Howard spent two weeks completing training and transitioned into handling her job duties by herself.

24.    Due to TheraNest increasing her workload, Howard regularly worked ten (10) to eleven (11) hours per day while caring for her newborn.

4

25.    Howard repeatedly asked Balch for help and told Balch she could not perform the work of two people.

26.    Balch refused to listen to Howard's requests and concerns.

27.    Within the first few weeks of Howard performing the job duties by herself, Balch came to Howard with a "coaching plan" discussing Howard's goals and targets.

28.    Howard attempted to reach out to Claypool for guidance or information about where Claypool left off on certain projects.

29.    Balch forbade Howard from speaking with Claypool or from asking her Claypool for help.

30.    On September 30, 2020, Balch issued Howard a Performance Improvement Plan ("PIP") with goals through the end of Quarter 4 (December 31, 2020).

31.    Howard had no prior knowledge, nor was she ever informed, that her work performance was unsatisfactory prior to receiving the PIP.

32.    Howard was a member of the team that received the Marketing Team of the Quarter recognition for Quarter 3, the Quarter during which Howard received the PIP.

33.    The PIP was extensive and included new requirements and deadlines that were extremely challenging.

34.     The goals and expectations outlined in the PIP were designed to be unattainable.

35.     Howard continued to work overtime and eleven (11) hour days to meet all goals, including meeting previously assigned project deadlines that were not listed on the PIP.

36.     While on the PIP, Howard met all goals of the PIP except for being one day late on a blog post because she had been sick.

37.     Howard had notified her supervisor that she was sick at that time that she was late on a blog post.

38.     TheraNest did not fulfill its goals under the PIP.

39.     Balch did not meet with Howard as dictated by the PIP and continually pushed and rescheduled their meetings.

40.     On November 20, 2020, Howard complained to Holmes in Human Resources, telling Holmes she was being bullied and discriminated against by Balch and that since she returned from maternity leave, she was met with unrealistic expectations and was being set up for failure.

41.     Howard also told Holmes that Balch was setting Howard up for termination or attempting to force Howard to quit, and that no other employees were being treated in the same adverse manner.

42.     Howard told Holmes that her coworkers, Claypool and Hayley Park (hereinafter "Park), witnessed Balch treating Howard differently and adversely compared to her coworkers. Claypool and Park both expressed that TheraNest's treatment of Howard was discriminatorily unfair due to her pregnancy.

43.     Holmes told Howard that she did not have children and did not know what it was like having to work long hours and go home and take care of a newborn.

44.     Holmes responded to Howard's requests for help and complaints of discrimination by offering no assistance, instead saying, "What would you like me to do about it?"

45.     Holmes did not investigate Howard's complaints or take corrective action to stop the discrimination.

46.     On December 1, 2020, Holmes terminated Howard, less than two weeks after she complained of discrimination and harassment.

## COUNT ONE
## TITLE VII SEXUAL DISCRIMINATION, HARASSMENT AND RETALIATION

47.     Plaintiff adopts and realleges 11 – 46 of the above referenced facts as if fully recited here.

48.     This is a claim against Defendant for the intentional discrimination against Plaintiff because of her gender in violation of Title VII.

49.     Plaintiff is female and was pregnant at all times relevant to this claim.

50.     Plaintiff's employment with Defendants had always been deemed satisfactory.

51.     Upon Defendant and its agents learning that Plaintiff was pregnant, she was treated adversely and terminated.

52.     Plaintiff's membership in a protected class or association with a protected class was a motivating factor in the Defendants' decision to discipline, harass and terminate Plaintiff's employment.

53.     Plaintiff was treated differently and subjected to differing terms and conditions in comparison to her male counterparts and non-pregnant individuals due to Plaintiff's gender and her pregnancy.

54.     As a proximate result of Defendants' unlawful intentional discrimination, Plaintiff suffered financial loss, economic loss, loss of career advancement, shame, and humiliation.

55.     Plaintiff seeks declaratory and injunctive relief, award of lost employment and career benefits and wages, back pay, front pay, interest, compensatory damages for loss of career opportunity, humiliation and embarrassment, costs, attorney's fees, punitive damages, and any and all such other relief the trier of fact may assess.

## COUNT TWO
## PREGNANCY DISCRIMINATION, HARASSMENT AND RETALIATION

56.     Plaintiff adopts and realleges 12 – 46 of the above referenced facts as if fully recited here.

57.     This is a claim against Defendants for the intentional discrimination against Plaintiff because of her pregnancy, in violation of Title VII and the Pregnancy Discrimination Act.

58.     Plaintiff is female, a member of a protected class, and at all times relevant to her claims, a pregnant female.

59.     Plaintiff's employment with Defendants was always deemed satisfactory until Defendants learned of Plaintiff's pregnancy in the fall of 2019.

60.     After Plaintiff announced she was pregnant, Defendant became critical of Plaintiff and her pregnancy.

61.     Plaintiff was treated differently and subjected to differing terms and conditions in comparison to non-pregnant employees due to her pregnancy.

62.     Defendants made disparaging remarks to Plaintiff about her pregnancy and subjected Plaintiff to disdain, ridicule, and hostility.

63.     Defendants caused Plaintiff's work conditions and terms to change.

64.     Defendants adversely caused Plaintiff's work location and hours to change due to her pregnancy.

65.   Defendants adversely caused Plaintiff to be subjected to policies and procedures that were not required of non-pregnant employees.

66.   Plaintiff was terminated due to her pregnancy and childbirth.

67.   As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff suffered financial loss, economic loss, loss of career advancement, shame, and humiliation.

68.   Plaintiff seeks declaratory and injunctive relief, award of lost employment and career benefits and wages, back pay, front pay, interest, compensatory damages for loss of career opportunity, humiliation and embarrassment, costs, attorney's fees, punitive damages and any and all such other relief the trier of fact may assess.

**WHEREFORE**, Plaintiff respectfully requests this Court:

I.   Permanently enjoin Defendant from engaging further in its discriminatory treatment on the basis of gender and pregnancy;

II.   Order Defendant, its agents, and its employees to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of their past and present unlawful employment practices, including implementing a consistent policy against gender discrimination and pregnancy discrimination in the work place;

III.     Order Defendant, its agents, and its employees to make Plaintiff whole by providing appropriate back pay with prejudgment interest, front pay, employment benefits, and other monetary relief as may be available to her;

IV.     Award Plaintiff compensatory and punitive damages;

V.     Award Plaintiff her costs and expenses herein, including reasonable attorney's fees; and

VI.     Award such other and further additional relief which this Court deems necessary and proper.

Respectfully submitted,

*/s/ Alicia K. Haynes*
Alicia K. Haynes
Attorney for Plaintiff

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
(205) 879-0377
akhaynes@haynes-haynes.com


**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**


**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL**

TheraNest dba Therapy Brands
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

**<u>PLAINTIFF'S ADDRESS:</u>**

Lindsey Wilhelm Howard
c/o Alicia K. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226